UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br>v.<br><br>SHANNON G. HARTFIELD et al.,<br><br>  Defendants. | CASE NO. 2:22-cr-00176-LK<br><br>ORDER DENYING MOTION TO SEVER COUNTS |

This matter comes before the Court on Defendant Shannon Hartfield's Motion to Sever Counts, Dkt. No. 180. For the reasons stated below, the Court denies the motion.

**I. BACKGROUND**

Mr. Hartfield faces various charges relating to alleged robberies of banks and marijuana dispensaries, along with alleged co-conspirator Michael Keylon Miller-Jimerson. *See* Dkt. No. 196 at 1. The Court recently continued trial to May 4, 2026 for both defendants. *Id.* at 25.

Given the nature of Mr. Hartfield's motion, the Court provides a detailed summary of the Indictment. *See generally* Dkt. No. 146. Mr. Hartfield is charged with 13 robberies or attempted

ORDER DENYING MOTION TO SEVER COUNTS - 1

robberies between December 24, 2021 and June 17, 2022, and faces numerous related firearms charges, as well as a conspiracy charge. *Id.* at 1–16. Eight of the robberies targeted marijuana dispensaries, and five targeted banks. *Id.* The indictment charges the following timeline:

- On December 24, 2021, Mr. Hartfield robbed the employees of Greenworks Cannabis and Greenfire Cannabis while using a Glock model pistol with an extended magazine. *Id.* at 3–4 (Counts 2–5).

- On January 21, 2022, Mr. Hartfield and Mr. Miller-Jimerson robbed Zips Cannabis while using a Glock Model 22 pistol and Glock Model 27 pistol. *Id.* at 5–6 (Counts 6–7).

- On February 17, 2022, Mr. Hartfield robbed Kushman's Dispensary and Have a Heart Dispensary while using a Glock Model 22 pistol and a Smith and Wesson semi-automatic handgun. *Id.* at 6–8 (Counts 8–11).

- On March 11, 2022, Mr. Hartfield and Mr. Miller-Jimerson robbed Lucid Cannabis and West Seattle Dispensary while using a black handgun. *Id.* at 8–10 (Counts 12–15).

- On April 18, 2022, Mr. Hartfield robbed Forbidden Cannabis. *Id.* at 11–12 (Count 18).

- On May 26, 2022, Mr. Hartfield robbed Seattle Credit Union and Sound Credit Union. *Id.* at 12–13 (Counts 19–20).

- On June 7, 2022, Mr. Hartfield and Mr. Miller-Jimerson—with their co-conspirator Mr. Danesxy Ortega—attempted to rob Chase Bank and did rob Salal Credit Union in Seattle while using a Glock Model 19 pistol and a Ruger 9mm semi-automatic pistol. *Id.* at 13–15 (Counts 21–24).

- On June 17, 2022, Mr. Hartfield and Mr. Miller-Jimerson robbed Chase Bank in Kent, Washington. *Id.* at 16 (Count 25).

The Indictment's charge of Conspiracy to Commit Robbery includes the pair recruiting individuals (including minors) "to rob banks and marijuana dispensaries at their direction," identifying locations to rob, providing vehicles and firearms for co-conspirators to use during the robberies, and "collect[ing] proceeds from the robberies and divid[ing] them up among the participants in each robbery" starting "at a time unknown, and continuing until on or after June 7,

ORDER DENYING MOTION TO SEVER COUNTS - 2

2022," with the factual allegations in Counts 2 through 25 constituting overt acts in furtherance of the conspiracy. *Id.* at 1–3.

## II.   DISCUSSION

Mr. Hartfield requests separate trials for the marijuana dispensary counts[1] and the bank robbery counts.[2] Dkt. No. 180 at 2. He says that the two groups of counts are "temporally, spatially, factually, and evidentially distinct" and therefore "improperly joined under Federal Rule of Criminal Procedure 8(a), resulting in prejudice requiring severance under Federal Rule of Criminal Procedure 14." *Id.*

The Government responds that "the very center of this case" is the robbery conspiracy between Mr. Hartfield and Mr. Miller-Jimerson, which involved "an agreement to commit as many violent robberies in this district as possible using recruits (often minors), firearms, and a rotating roster of lookout vehicles." Dkt. No. 191 at 1. The Defendants are alleged to have employed "a similar *modus operandi* throughout the robbery scheme," "hon[ing] their craft" over time, and committing "actual armed robberies of various Washington marijuana dispensaries, banks, and credit unions . . . in rapid succession over a six-month period." *Id.* Because the conspiracy involves "one common scheme" and "the robberies are of a similar character," the United States urges the Court to deny Mr. Hartfield's motion. *Id.* at 1, 3–6. The Government also argues that Mr. Hartfield has failed to show that joinder of all robbery counts would result in clear, manifest, or undue prejudice to him under Federal Rule of Criminal Procedure 14. *Id.* at 6–8.

Federal Rule of Criminal Procedure 8(a) permits joinder of criminal offenses that are "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Joinder is "the rule rather than the exception in

---

[1] Counts 2–15, 18. Dkt. No. 146 at 3–12. Mr. Hartfield is not charged in counts 16 and 17. *See id.* at 10–11.

[2] Counts 19–25. *Id.* at 12–16.

ORDER DENYING MOTION TO SEVER COUNTS - 3

criminal cases." *United States v. Nolan*, 700 F.2d 479, 482 (9th Cir. 1983). "Even if counts are correctly joined initially under Rule 8(a), the district court may still sever the counts under Rule 14 if joinder is manifestly prejudicial." *United States v. Prigge*, 830 F.3d 1094, 1098 (9th Cir. 2016) (citation modified).

A.   **Joinder under Rule 8(a) is Appropriate**

The Court first observes that Mr. Hartfield provides no basis to treat the dispensary robberies and the bank robberies as two separate classes. All robberies proceeded along at the same clip—roughly one month between each robbery or spree of robberies—and in the same fashion, as discussed in greater detail below. Other than the type of business that was targeted, nothing in the record before the Court supports treating these as two separate classes of offenses. And Mr. Hartfield does not explain why the offenses should be distinguished based on the type of targeted business. Even if the Court were to do so, joinder would be appropriate under Rule 8(a).

1.   <u>The Offenses in the Indictment are of the Same or Similar Character</u>

One basis for joinder is when alleged offenses are "of the same or similar character." Fed. R. Crim. P. 8(a). This is the "most amorphous and controversial [ground] for joinder," warranting scrutiny when used as the basis for joining counts. *See United States v. Jawara*, 474 F.3d 565, 575 (9th Cir. 2007). Rather than "eyeball[ing] the indictment" for offenses of a "like class," courts must consider "factors relevant to the question of similarity, such as temporal proximity, physical location, modes of operation, identity of the victims, [and] likelihood of evidentiary overlap." *Id.* at 577. While this is a highly context-specific assessment, "the bottom line is that the similar character of the joined offenses should be ascertainable—either readily apparent or reasonably inferred—from the face of the indictment." *Id.* at 578.

Mr. Hartfield argues that the two classes of robberies do not meet this this standard. *See generally* Dkt. No. 180 at 2–5. According to Mr. Hartfield, "[t]he body of proof underlying the

bank robbery counts would not be cross-admissible in the government's case-in-chief on the dispensary counts, and vice versa"; "[e]ach set of counts involves different witnesses, different alleged victims, different geographic locations, different body of facts, and the offenses occurred on different days, months apart." *Id.* at 4–5. He adds that it is "unclear how trying these counts together could substantially further the 'customary justifications of joinder' of 'efficiency and economy,'" and "[a]ny savings in efficiency that would result from permitting joinder, such as empaneling a single jury, is minimal when weighed against the prejudice that is inherent in a joint trial of these distinct counts." *Id.* at 5 (quoting *Jawara*, 474 F.3d at 575).

The Government responds that (1) "the charged robberies are all connected by a similar element: that is, the unlawful taking or obtaining of property from the person of another by means of actual or threatened force or violence"; (2) "there would be significant evidentiary overlap even if the dispensary robberies and bank robberies were severed," especially regarding "extensive planning communications" among the co-conspirators and accomplices; (3) "the *modus operandi* was similar across all robberies, as is apparent from the face of the Indictment," including "the defendants' recruitment of minors, supplying of firearms and vehicles, controlling the flow of proceeds, and serving as robbery lookouts"; and (4) "the charged robberies are part of a continuous streak of robberies that occurred in rapid succession over less than a year," noting that "[t]here is less than two months between the last charged dispensary robbery and the first charged bank robbery." Dkt. No. 191 at 5–6.

After a close review of the indictment, the Court finds that most of the *Jawara* factors support joinder. First, the Court easily finds the offenses to be of a "like class," joined at least by the unlawful taking of property by means of "actual and threatened force, violence, and fear of injury" or "force, violence and intimidation." *See generally* Dkt. No. 146 at 3–16. Next, the Court finds that the two classes of robberies share "temporal proximity" given that all offenses were

committed over roughly six months and that only about a one-month gap existed between the last charged dispensary robbery and the first charged bank robbery. Dkt. No. 146 at 3, 11–12, 16 (charged robberies occurred between December 24, 2021 and June 17, 2022; last charged dispensary robbery took place on April 18, 2022, while first charged bank robbery occurred May 26, 2022); *see also United States v. Scott*, 732 F.3d 910, 916 (8th Cir. 2013) (finding that 17 months encompassing three robberies "is a sufficiently short time under Rule 8(a)"); *United States v. Johnson*, 820 F.2d 1065, 1071 (9th Cir. 1987) ("The robberies were separated by three months, a substantial time period, but not too remote to be probative[.]").

The Court is also persuaded that the classes share a *modus operandi*, including recruiting minors to perform the robberies at Mr. Hartfield and Mr. Miller-Jimerson's direction, supplying firearms and vehicles, waiting nearby while co-conspirators robbed banks and dispensaries, and controlling the allocation of proceeds. Dkt. No. 146 at 2.[3]

Third, there is a high likelihood of evidentiary overlap between the classes of robberies, especially as it pertains to the *modus operandi* discussed above, the planning communications between the co-conspirators and accomplices, and the repeat participation and/or abetting of various accomplices in both dispensary and bank robberies. Dkt. No. 146 at 2–3; *see also, e.g.*, *Miller-Jimerson*, Dkt. No. 1 at 5, 12–14 (Mar. 18, 2024).

---

[3] *See also Miller-Jimerson*, Dkt. No. 1 at 5 (Mar. 18, 2024) ("Investigators believe MICHAEL MILLER-JIMERSON worked with Shannon George Hartfield . . . to direct juveniles to commit marijuana store and bank robberies in this District. . . . While investigating [multiple bank and marijuana store robberies associated with a "marked increase" in such activities between December 2021 and June 2022], detectives from state law enforcement agencies identified a pattern of behavior belonging to a group of individuals that specifically targeted marijuana stores, pawn shops, jewelry stores, and banks," for a total of "at least 45 separate armed robberies and attempted armed robberies, including one homicide, that were committed by members of the conspiracy between December 2021 and June 2022") *id.* at 12 ("The blue Chevy Cruze identified in the World of Weed investigation was identified again on security video footage from the June 7, 2022, attempted bank robbery at Chase Bank and the robbery at Salal Credit Union in Seattle," is "registered to a person believed to be MILLER-JIMERSON'S girlfriend," and was observed in the parking lot where co-conspirators conducted a "pre-planning meeting" shortly before the June 7 robberies); *id.* at 13–14 (Acura driven by Hartfield as a getaway vehicle after the June 7, 2022 bank robberies was registered to Jeremy Dubois, who confessed to his involvement in "multiple February 2022 armed dispensary robberies in King County that were coordinated by Hartfield").

As for "physical location" and "identity of victims," the Court finds that these factors are largely neutral. On the one hand, both classes of robberies occurred at physical stores rather than residences or government facilities and involved the taking of property from the businesses. *Compare* Dkt. No. 146 at 3 (robbery at "Greenworks Cannabis"—a business), *with id.* at 19 (robbery at Sound Credit Union—a business). On the other hand, the indictment does not allege that these happened in closer physical proximity than simply within the District or that the victims were similar beyond both classes being businesses.[4]

Finding the robberies to be of the same or similar character does not require the Court to "engage in inferential gymnastics or resort to implausible levels of abstraction to divine similarity." *Jawara*, 474 F.3d at 578. The Indictment connects the offenses through much more than "facial similarity of subject matter." *Id.* at 579. The classes are properly joined because they are of the same or similar character. *See United States v. Drummondo-Farias*, 622 F. App'x 616, 618 (9th Cir. 2015) (conspiracy and distribution counts were the same or similar character "because they both relate to dealing methamphetamine in Hawaii within a relatively short period of time").

    2. <u>Common Scheme</u>

The Government argues that the robberies were also "all part of a common scheme and plan." Dkt. No. 191 at 3. This theory permits joinder of counts that "grow out of related transactions." *Jawara*, 474 F.3d at 574 (citation modified). Courts "ask whether commission of

---

[4] Mr. Hartfield relies on *United States v. Kincaide*, No. 2:15-cr-00071-JAD-GWF, 2016 WL 6154901, at *3–5 (D. Nev. Oct. 21, 2016), in which a court severed counts due to a lack of temporal proximity and evidentiary overlap. Dkt. No. 180 at 5. However, the facts in *Kincaide* are very different than those here, and the case is therefore inapposite. *See Kincaide*, 2016 WL 6154901, at *3 ("The November 2014 robberies occurred in close temporal proximity to one another and both Defendants allegedly committed those robberies. The September 12, 2011 robbery, however, occurred *three years earlier* and there is no allegation that Defendant Florez was involved in that robbery. The Court cannot discern any common scheme or plan between the September 12, 2011 robbery and the November 2014 robberies." (emphasis added)).

ORDER DENYING MOTION TO SEVER COUNTS - 7

one of the offenses either depended upon or necessarily led to the commission of the other; [and whether] proof of the one act either constituted or depended upon proof of the other." *Id.* (citation modified). The Government says this basis is applicable here because "[t]he robberies are all connected by the defendants' common scheme: to commit as many robberies as possible using recruits and firearms, and by eliciting fear in their victims." Dkt. No. 191 at 3. The Government highlights that "[t]he cornerstone of this case is the conspiracy between Hartfield and Miller-Jimerson, and all of the charged robberies flow from that conspiracy." *Id.* at 4.

Mr. Hartfield indirectly challenges this theory of joinder by arguing that "the government has chosen to include an overbroad conspiracy count which includes each of the charged substantive robbery counts," making the "conspiracy count . . . duplicitous." Dkt. No. 180 at 5–6.[5] As the Government points out, Mr. Hartfield's argument is "foreclosed by longstanding Supreme Court precedent" establishing that a conspiracy charge is "not duplicitous . . . however diverse its objects." Dkt. No. 191 at 4 (quoting *Braverman v. United States*, 317 U.S. 49, 54 (1942)); *see also United States v. Smith*, 891 F.2d 703, 713 (9th Cir. 1989) ("[A] charge of conspiracy to commit more than one offense may be included in a single count without violating the general rule against duplicity."). Indeed, "[t]he double jeopardy clause *precludes* the government from dividing a single conspiracy into multiple charges and pursuing successive prosecutions against the defendant." *United States v. Guzman*, 852 F.2d 1117, 1119–20 (9th Cir. 1988) (quoting *United States v. Vaughan,* 715 F.2d 1373, 1375 (9th Cir. 1983) (emphasis added)). "A single conspiracy exists where there is one overall agreement to perform a variety of functions to achieve the objectives of the conspiracy[.]" *Id.* at 1120. Here, the Indictment charges "one single agreement

---

[5] Mr. Hartfield blurs two bases for joinder—"same or similar character" and "common scheme"—but only presents arguments on the former. *Compare id.* at 2 ("The defense disputes the notion that the bank robberies and the dispensary robberies are based on the same act or transaction or are somehow connected with or constitute parts of an overarching common scheme or plan."), *with id.* at 2–5 (only presenting argument disputing that the counts are of the "same or similar character").

ORDER DENYING MOTION TO SEVER COUNTS - 8

to commit robbery," Dkt. No. 146 at 1–3; therefore, the charge is not duplicitous. *Braverman*, 317 U.S. at 54.[6]

The commission of the conspiracy here "necessarily led to the commission" of the charged robberies—both those of marijuana dispensaries and of banks—and grew "out of related transactions." *See Jawara*, 474 F.3d at 574 (citation modified). Again, as charged in the Indictment, the conspiracy involved the recruiting of individuals (often minors) to perform the robberies, the supply of firearms, and the supply of vehicles, with the target of robbing banks and marijuana dispensaries and sharing in the proceeds. *See* Dkt. No. 146 at 2–3. The robberies were all overt acts taken "[d]uring and in furtherance of the conspiracy," *id.* at 2, and such acts necessarily arose from the conspiracy. *See United States v. Hill*, 604 F. App'x 759, 768 (10th Cir. 2015) (holding that joinder was proper because individual robberies of banks, credit unions, and pharmacies "were alleged as the overt acts establishing the conspiracy"). Therefore, the classes of offenses are properly joined as a common scheme.

### B. Joinder of All Counts is Not Unduly Prejudicial

Even if joinder is appropriate under Federal Rule of Criminal Procedure 8, "the court may order separate trials" if joinder "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). "The trial judge has great discretion in ruling on Rule 14 motions," *United States v. Ragghianti*, 527 F.2d 586, 587 (9th Cir. 1975), and "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials,"

---

[6] Mr. Hartfield cites to *United States v. UCO Oil Co.*, 546 F.2d 833 (9th Cir. 1976) for the proposition that "fundamental due process rights of defendants" prohibit "the joining in a single count of two or more distinct and separate offenses." Dkt. No. 180 at 6. *UCO* involved the Government charging each "defendant[] both with having 'made . . . false writings . . . knowing the same to contain false . . . statements' and with having 'falsified, concealed and covered up by trick, scheme and device material facts,'" "based on the making of a single false document." *Id.* at 835. The Government argued that the Defendants' acts violated "two provisos" for each document, but the Ninth Circuit rejected that argument, finding the charges duplicitous. *Id.* at 835–38. Importantly, though, the Ninth Circuit opined that the situation would be different if there was a "charge of the substantive crime in one count and of a conspiracy in another"—something that was absent in *UCO*. *Id.* at 835 n.2.

ORDER DENYING MOTION TO SEVER COUNTS - 9

*Zafiro v. United States*, 506 U.S. 534, 540 (1993). Indeed, while some prejudice may be inherent in any joinder of counts, *cf. United States v. Vaccaro*, 816 F.2d 443, 448–49 (9th Cir. 1987), to satisfy Rule 14, a defendant must demonstrate "clear, manifest, or undue prejudice" of such magnitude that, without severance, it will compromise the fundamental fairness of the trial, *United States v. Vasquez-Velasco*, 15 F.3d 833, 845–46 (9th Cir. 1994) (citation modified). This standard is "exacting." *Jawara*, 474 F.3d at 579. A defendant is unlikely to meet this standard when evidence would be cross-admissible in separate trials. *See, e.g.*, *Johnson*, 820 F.2d at 1070 ("If all of the evidence of the separate count would be admissible upon severance, prejudice is not heightened by joinder.").

Mr. Hartfield argues that he is prejudiced by joinder because "[t]he government is free to include as many substantive offenses as it wishes in a conspiracy count, precluding the defense from arguing for a pre-trial severance," and "[e]ven if the defendant is found not guilty due to a duplicitous conspiracy count, the jury still will have heard all of the evidence on the unrelated robbery counts and related firearm enhancements[.]" Dkt. No. 180 at 6. Mr. Hartfield fears that this could be prejudicial to him because the jury may be "unable to compartmentalize the evidence from the multiple unrelated counts." *Id.*

At the outset, having found that the charged conspiracy is not duplicitous, *see Braverman*, 317 U.S. at 54, the Court concludes that Mr. Hartfield's general qualms with conspiracy charges do not entitle him to severance absent a clear showing of prejudice. And the evidence of both classes of robberies and related firearm enhancements very well may be admissible in separate trials to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"; Mr. Hartfield has not demonstrated otherwise. *See* Fed. R. Evid. 404(b)(2); *see also United States v. Jones*, No. CR 23-00017 HG-02, 2024 WL 5170925, at *7 (D. Haw. Dec. 18, 2024) ("Severance is not warranted because the inextricably intertwined evidence

would remain admissible even if the counts were severed. The evidence is probative of the related charged crimes and it involves the same drug, in the same location, over a relatively short period of time . . . . [e]ven if the evidence was not inextricably intertwined, the evidence would be admissible at severed trials pursuant to Fed. R. Evid. 404(b)."). Because Mr. Hartfield has not demonstrated that evidence of "unrelated robbery counts and related firearm enhancements," Dkt. No. 180 at 6, would be inadmissible in separate trials, he fails to establish prejudice on that basis.

But even if that evidence were not admissible in separate trials, Mr. Hartfield's "speculation that the jury [would be] unable to follow instructions" regarding proof for each alleged crime does not entitle him to severance. *See United States v. Williams*, 989 F.2d 1061, 1071 (9th Cir. 1993) ("[Defendant] is not entitled to a new trial on account of his speculation that the jury was unable to follow instructions."). Juries are capable of compartmentalizing evidence "so that evidence of one crime does not taint the jury's consideration of another crime," especially after a "proper[] instruct[ion]" by the Court. *Johnson*, 820 F.2d at 1070 (upholding denial of severance motion on three counts of bank robbery against one defendant); *see also United States v. Larson*, 507 F.2d 385, 389 (9th Cir. 1974) ("The number of counts does not compel the conclusion that the jury was confused. The jury, aided by careful instruction by the court on relating evidence to specific counts and the elements involved in the proof of each count, was able to discriminate between the counts."); *United States v. Le*, No. CR. S-99-433 WBS, 2002 WL 32103064, at *1 (E.D. Cal. Nov. 7, 2002) ("Without a showing that the instructions of the trial judge will be insufficient to neutralize the prejudicial effect of evidence relating to the guilt of co-defendants, jointly charged defendants are to be tried jointly."). "Judicial economy justifies reliance on the jury to follow the instructions of the court that segregate the evidence and limit the applicability of the evidence[.]" *United States v. Matta-Ballesteros*, 71 F.3d 754, 771 (9th Cir. 1995) (quoting *Vaccaro,* 816 F.2d at 448) (discussing severance of defendants). Nothing in the

briefing suggests there is something distinct about this case that would preclude a jury from following the Court's instructions, so Mr. Hartfield is not entitled to severance on that basis either.

### III.  CONCLUSION

For the foregoing reasons, Mr. Hartfield's Motion to Sever Counts, Dkt. No. 180, is DENIED.

Dated this 26th day of November, 2025.

*Lauren King*
Lauren King
United States District Judge