UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 Plaintiff,<br><br>    v.<br><br>SHANNON G. HARTFIELD et al.,<br><br>                Defendants. | CASE NO. 2:22-cr-00176-LK<br><br>ORDER DENYING MOTION TO<br>SUPPRESS PHONE RECORDS |

This matter comes before the Court on Defendant Shannon Hartfield's Motion to Suppress Phone Records, Dkt. No. 185. For the reasons stated below, the Court DENIES the motion.[1]

## I. BACKGROUND

Mr. Hartfield faces various charges relating to alleged robberies of banks and marijuana dispensaries, along with co-conspirator Michael Keylon Miller-Jimerson. *See* Dkt. No. 196 at 1. Mr. Hartfield was first indicted for federal offenses based on the alleged robberies on October 12,

---

[1] The Court finds it appropriate to resolve this motion without an evidentiary hearing. *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist.").

2022. Dkt. No. 1. At the time of his arrest on the federal indictment, Mr. Hartfield was being held in the King County Jail on related state charges. *See* Dkt. No. 4 at 2; Dkt. No. 179 at 5.

On March 15, 2022, as part of the state investigation, the King County Prosecuting Attorney's Office sought a search warrant for records related to the phone number 253-929-4529. *See* Dkt. No. 185 at 14–41. According to the warrant application, law enforcement associated that phone number with Mr. Hartfield after investigating a vehicle owned by Mr. Hartfield that fled the scene of a robbery at Novel Tree Marijuana dispensary in Bellevue, Washington on March 1, 2022. *See id.* at 18–28, 35–36. The Prosecuting Attorney's Office supported its warrant application with an affidavit from a Bellevue Police Department investigator that attested to the following facts tying Mr. Hartfield to multiple robberies and to the phone number 253-929-4529. The suspects of the Novel Tree Marijuana dispensary robbery appeared to use at least one cellular phone during the robbery, and fled in an "older model white sedan with a square rear end." *Id.* at 20, 28. Shortly after the robbery, a police officer spotted and followed a "white, mid 1990s model year, Acura TL sedan" with a rectangular rear end and no license plates affixed to the rear "driving southbound on I-405" at high rates of speed, but the officer eventually lost track of the vehicle. *Id.* at 20–21. After the officer could not relocate the Acura and exited the highway, he "received a report of a single-vehicle rollover collision . . . involving a white Acura TL older-model sedan" with three male suspects that had "fled from the crash." *Id.* at 21–22. Officers "looked into the Acura" and saw a handgun and "several marijuana packages and loose pieces of suspected marijuana." *Id.* at 24. Officers ran the VIN number of the Acura and determined that the registered owner was Shannon Hartfield, *id.* at 25, 27; and photos from the scene of the robbery at Novel Tree Marijuana dispensary resembled Mr. Hartfield, *id.* at 26, 28, 32.

Officers later determined that Mr. Hartfield used the number 253-929-4529 to help facilitate a prior vehicle purchase. *Id.* at 35. After suspects fled the scene of multiple robberies in

February 2022 in a "1995 silver Volvo 850 with WA license number 830ZHW" that had been sold to Mr. Hartfield, *id.* at 33, law enforcement discovered that the Volvo's registered owner had recently sold the car to an individual who had messaged the owner on Facebook with the profile name "Camp Lazlo," the profile link https://www.facebook.com/shannon.hartfield.505, profile pictures depicting Mr. Hartfield, and a note that his name was pronounced, "SHAN-in HARRT-feeld," *id.* at 33–35. The Volvo's registered owner confirmed that the "person in the profile pictures was the person he sold his vehicle to." *Id.* at 35. Additional evidence of other robberies and connections to Mr. Hartfield were also submitted. *Id.* at 32–36.

The Prosecuting Attorney's Office also put forth evidence of Mr. Hartfield having numerous ties to the number 253-929-4529 as his most recently used phone number. For example, Tacoma police records reflected a January 3, 2022 traffic collision involving Mr. Hartfield, listing his phone number as 253-929-4529, *id.* at 35–36; a TransUnion search of Mr. Hartfield associated the same phone number with him, *id.* at 36; and a former Community Corrections Officer previously assigned to Mr. Hartfield attested that 253-929-4529 was Mr. Hartfield's number and said that "[s]he last talked with him on this phone number on [February 3, 2022]," *id.* at 36. A Ztex search showed that T-Mobile was the service provider for the phone number 253-929-4529. *Id.* at 33.

Based on the above—and additional information provided in the warrant application—the King County Superior Court found probable cause that Mr. Hartfield committed Robbery in the First Degree, that he was "in possession of the device assigned the number 253-929-4529," and that "obtaining the requested real-time and historic location data related to the device assigned the target number [would] lead to obtaining evidence of the above-listed crime[.]" *Id.* at 8. The court issued search warrant number 22-2-12087 on March 15, 2022, *id.* at 7–13, ordering T-Mobile "to obtain and provide real-time location data related to the target address" *id.* at 11—i.e., 253-929-

1    4529, *id.* at 8. The warrant included a continuity provision, including within the target address

2    "any other account, number, network, hardware or software identity or other unique device

3    identifier, to which the target address has changed for the two months preceding the signing of this

4    order." *Id.* at 12.

5          T-Mobile turned over location data for a different phone number: 206-816-4387. Dkt. No.

6    185 at 44; *see also* Dkt. No. 192-1 at 22. The Government then "contacted T-Mobile and inquired

7    about the discrepancy," and T-Mobile "advised the subscriber changed the phone number on the

8    account from 253.929.4529 to 206.816.4387 on 2.19.2022 but retained the account and service."

9    Dkt. No. 185 at 44; *see also* Dkt. No. 192-1 at 22. Mr. Hartfield says his Fourth Amendment rights

10   were violated by the Government reviewing the provided records and requests that "all T-Mobile

11   records obtained pursuant to warrant number 22-2-12087 related to 206-816-4387" be suppressed.

12   Dkt. No. 185 at 1.

13                                      **II.    DISCUSSION**

14   **A.    The Relevant Data Was Within the Scope of the Warrant**

15         Mr. Hartfield argues that "[t]he warrant only authorized the location records for 253-929-

16   4529," making the Government's review of records related to the phone number 206-816-4387 a

17   violation of his Fourth Amendment rights. Dkt. No. 185 at 5. As the Government points out, Mr.

18   Hartfield is incorrect about the scope of the warrant. Dkt. No. 192 at 6.[2]

19

20

21   [2] Counsel is again reminded that "arguments are not evidence," *United States v. Maldonado*, No. 24-6133, 2024 WL
     5244829, at *4 (10th Cir. Dec. 30, 2024); if any motion or associated brief "requires the consideration of facts not
22   appearing of record," the filing party must support those facts through "affidavits and photographic or documentary
     evidence presented in support of the motion," CrR 12; *see also United States v. Loo*, No. 24-CR-00072, Dkt. Nos. 46,
     46-1 (W.D. Wash. May 23, 2025) (example of properly supported brief). Dkt. No. 196 at 26. In addition, "the parties
23   shall, insofar as possible, cite the page and line of any part of the . . . record to which their pleadings, motions or other
     filings refer." CrR 12(e)(6). Here, both parties attach exhibits to their briefs without providing a declaration attesting
24   to the exhibits' authenticity, and at times fail to cite to the record with specificity to support factual assertions. *See,
     e.g.*, Dkt. No. 185 at 3; Dkt. No. 192 at 3 (repeatedly citing "Exhibit 1").

1    The King County Superior Court issued warrant number 22-2-12087 on March 15, 2022,

2    which ordered T-Mobile "to obtain and provide real-time location data related to the target

3    address," defined as 253-929-4529. Dkt. No. 185 at 7–13. The warrant included a continuity

4    provision including in the "target address" "*any other* account, *number*, network, hardware or

5    software identity or other unique device identifier, *to which the target address has changed for

6    the two months preceding the signing of this order*." *Id.* at 8, 12 (emphasis added). This continuity

7    provision expanded the scope of the warrant beyond just records for the phone number 253-929-

8    4529.

9    T-Mobile turned over location data related to the phone number 206-816-4387 because

10   "the subscriber changed the phone number on the account from 253-929-4529 to 206-816-4387

11   on February 19, 2022 but retained the account and service." *Id.* at 3. The warrant's continuity

12   provision—including "any other . . . number . . . to which the target address has changed for the

13   two months preceding the signing of this order" as part of the target address—covers this exact

14   situation. *Id.* at 12. Because the phone number 253-929-4529 changed to 206-816-4387 on

15   February 19, 2022—less than one month before the March 15, 2022 date that the warrant issued—

16   the data related to phone number 206-816-4387 was within scope of the warrant based on the

17   continuity provision. *See id.*

18   **B.    The Warrant Was Supported by Probable Cause and Sufficiently Particularized**

19   Mr. Hartfield argues that there was no probable cause for the Government "to search

20   records associated with 206-816-4387," and that to the extent the warrant permitted that search, it

21   violated the Fourth Amendment because it was not sufficiently specific. *See id.* at 4–5. The

22   Government disagrees on both grounds. Dkt. No. 192 at 4–6.

23   The Fourth Amendment imposes the following requirements: (1) "warrants must be issued

24   by neutral, disinterested magistrates"; (2) "those seeking the warrant must demonstrate to the

1    magistrate their probable cause to believe that the evidence sought will aid in a particular

2    apprehension or conviction for a particular offense"; and (3) "warrants must particularly describe

3    the things to be seized, as well as the place to be searched." *Dalia v. United States*, 441 U.S. 238,

4    255 (1979) (citation modified). Mr. Hartfield's arguments center on the latter two requirements:

5    probable cause and particularity. Probable cause requires "a reasonable nexus between the

6    activities supporting probable cause and the locations to be searched." *United States v. Pitts*, 6

7    F.3d 1366, 1369 (9th Cir. 1993) (citation modified). As for particularity, "[t]he [warrant's]

8    description must be specific enough to enable the person conducting the search reasonably to

9    identify the things authorized to be seized." *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir.

10    1986).

11        Mr. Hartfield does not challenge probable cause for the search of the phone number 253-

12    929-4529 or the particularity of the warrant as to that phone number. *See generally* Dkt. 185 at 1–

13    5. Indeed, the warrant application provided ample evidence that Mr. Hartfield committed Robbery

14    in the First Degree, that he was in possession of the device assigned that number, and that obtaining

15    the requested location data would lead to relevant evidence. *See id.* at 14–41; *see also id.* at 7–13.

16    Instead, Mr. Hartfield essentially disputes the validity of the warrant's continuity provision. He

17    argues that "there simply was no probable cause to search records associated with 206-816-4387,"

18    *id.* at 5, and suggests that the continuity provision permitted an unlawful "[g]eneral search[]," *id.*

19    at 4–5. The Court therefore must determine whether there was a reasonable nexus between the

20    alleged Robbery and the locations described in the continuity provision (i.e., 206-816-4387), *Pitts*,

21    6 F.3d at 1369, and whether the continuity provision included sufficiently particularized

22    descriptions of the locations to be searched, *Spilotro*, 800 F.2d at 963.

23

24

1      1.  Probable Cause Supported the Warrant

2           Probable cause requires "a reasonable nexus" between the alleged crime and "the locations

3   to be searched." *Pitts*, 6 F.3d at 1369. It is a "fluid concept" that "turn[s] on the assessment of

4   probabilities in particular factual contexts" and is "not readily, or even usefully, reduced to a neat

5   set of legal rules." *United States v. Adjani*, 452 F.3d 1140, 1145 (9th Cir. 2006). "Probable cause

6   exists if it would be reasonable to seek the evidence in the place indicated in the affidavit." *Id.*

7   (citation modified).

8           As discussed above, it is undisputed that probable cause supported that Mr. Hartfield was

9   in possession of the device assigned the number 253-929-4529, and that obtaining location data

10  "related to [that] device" would lead to relevant evidence. Dkt. No. 185 at 8. The Court easily finds

11  a reasonable nexus between the Robbery allegations and location data tied to 253-929-4529, *see*

12  *id.* at 14–41; *see also id.* at 7–13. *See Pitts*, 6 F.3d at 1369.

13          The extension of the "locations to be searched" from 253-929-4529 to locations in the

14  continuity provision—that is, "any other account, number, network, hardware or software identity

15  or other unique device identifier, to which the target address has changed for the two months

16  preceding the signing of this order," *id.* at 12—does not materially alter this nexus. *See Pitts*, 6 F.3d

17  at 1369. The continuity provision required that, to be searched, a number must have replaced 253-

18  929-4529, and that replacement must have occurred within two months of the warrant's issuance.

19  Dkt. No. 185 at 12. Those restrictions kept any search closely tethered to 253-929-4529, a number

20  over which there was probable cause to search.

21          Considering the "probabilities in [this] particular factual context[]," *Adjani*, 452 F.3d at

22  1145, such as the relative ease with which telephone numbers may be changed, it was reasonable

23  for the warrant to include alterations to the device and/or its number as searchable locations. The

24  continuity provision allowed a marginal increase in scope of the search to account for

1    circumstances just like these—a phone number changed in close proximity to the relevant dates.

2    The Court finds the continuity provision reasonable under the circumstances and therefore finds

3    the search of 206-816-4387 to be supported by probable cause.

4       2.    <u>The Warrant Described Locations with Sufficient Particularity</u>

5       Having found probable cause, the Court now assesses whether the warrant provided

6    sufficiently particularized descriptions of the locations to be searched, such that the warrant

7    prevented "general, exploratory searches and indiscriminate rummaging through [Mr. Hartfield]'s

8    belongings[.]" *Spilotro*, 800 F.2d at 963. Notably, the "prohibition of general searches is not to be

9    confused with a demand for precise ex ante knowledge of the location . . . of evidence related to

10    the suspected violation." *United States v. Meek*, 366 F.3d 705, 716 (9th Cir. 2004). "The proper

11    metric of sufficient specificity is whether it was reasonable to provide a more specific description

12    of the items at that juncture of the investigation." *Id.*

13       In seeking the warrant, the Government averred that Mr. Hartfield was in possession of the

14    device assigned the number 253-929-4529, and that obtaining the requested location data related

15    to that device would lead to relevant evidence. Dkt. No. 185 at 14–41. There is no indication that

16    the Government could have "provide[d] a more specific description" of the "location of

17    evidence . . . at [that] juncture of the investigation," *see Meek*, 366 F.3d at 716, beyond identifying

18    with specificity the phone number it knew to be associated with Mr. Hartfield's device and

19    requesting foreseeable permutations to the device and/or number. The object of the search was to

20    obtain "real-time location information" because "cell phone owners typically have their phones

21    either with or very near them." Dkt. No. 185 at 39. At the time the Government applied for the

22    warrant, it did not know the unique subscriber account number associated with the target address,

23    the physical location of the device using the target address, the type of cell phone, or the

24    communications protocol. *Id.* at 37. And it noted that each cell phone "has one or more unique

1  network or hardware identifiers," and "[i]f a unique identifier is changed for any reason, the service

2  provider also retains and uses the new identifier." *Id.* at 38. Requiring additional specificity under

3  these circumstances would run afoul of the principle that "precise ex ante knowledge of the

4  location . . . of evidence" is not required. *Meek*, 366 F.3d at 716; *cf. United States v. Gordon*, 871

5  F.3d 35, 43–44 (1st Cir. 2017) ("We can think of no good reason why Title III's particularity

6  requirement should be read as limiting a wiretap to a specific telephone number rather than a

7  specific ESN or IMEI number reasonably believed to be used by the target."); *United States v.*

8  *Oliva*, 705 F.3d 390, 400–01 (9th Cir. 2012) (holding, with respect to 18 U.S.C. § 2581(4)(b), that

9  order authorizing interception not only of named target phone numbers, but also of "any changed

10  telephone number or any other telephone number subsequently assigned to or used by the

11  instrument bearing the same ESN and/or IMSI" was sufficiently descriptive to satisfy Title III's

12  mandate that order describe "the nature and location of the communications facilities").

13      Next, Mr. Hartfield argues that "law enforcement should have sought a new warrant

14  utilizing the number 206-816-4387" once probable cause developed to do so, rather than reviewing

15  the records associated with 206-816-4387 that were produced pursuant to the first warrant. Dkt.

16  No. 185 at 5. That argument focuses on the wrong timeframe. The Court must determine whether

17  it was reasonable to provide a more specific description of the items "at [the] juncture of the

18  investigation" when the Government sought the warrant. *Meek*, 366 F.3d at 716. Considering what

19  the Government knew at the time it sought the warrant, as reflected in its detailed application,

20  requiring more specificity would not have been reasonable. *See* Dkt. No. 185 at 14–41. To the

21  extent Mr. Hartfield is arguing that searches are only allowed for phone numbers expressly listed

22  on a warrant, the Court is not persuaded, especially given the relative ease of changing one's phone

23  number. Under such a rule, "much evidence could escape discovery" because of a defendant's

24  choice to change his number. *Adjani*, 452 F.3d at 1150. "To require such a pin-

pointed . . . search"—limited to only the phone number presently known to the Government—
"would likely have failed to cast a sufficiently wide net to capture the evidence sought." *Id.* at
1149–50; *see also id.* at 1150 ("Computer files are easy to disguise or rename, and were we to
limit the warrant to such a specific search protocol, much evidence could escape discovery simply
because of [defendant's] labeling of the files documenting [his] criminal activity.").

Finally, there is no evidence suggesting that the warrant permitted "general, exploratory
searches and indiscriminate rummaging through [Mr. Hartfield's] belongings." *Spilotro*, 800 F.2d
at 963. The warrant permitted a search for real-time and historic location data, as well as historic
subscriber data, associated with the phone number 253-929-4529 and other foreseeable
permutations of the device or number, and was limited in temporal scope. *See* Dkt. No. 185 at 8–
9, 11–12. The historic data sought was only "from February 9, 2022 to the date of compliance with
[the] warrant/order." *Id.* at 9. This was specific enough to enable the person conducting the search
to identify the things authorized to be seized and did not permit an unlawful general search. *See
Spilotro*, 800 F.2d at 963; *see also United States v. Duran*, 189 F.3d 1071, 1086 (9th Cir. 1999)
(no Fourth Amendment violation when "wiretap application contained sufficient information to
establish probable cause to wiretap any cell phone associated with the phone number identified in
the order"); *United States v. Ortiz*, No. C 12-00119 SI, 2013 WL 6842537, at *5 (N.D. Cal. Dec.
27, 2013) (wiretap orders "did not delegate too much authority to law enforcement to determine
what phones to tap" when it permitted wiretap of telephone "where the subscriber information was
associated with a particular ESN number, but the related telephone number changed").

The Court therefore finds that the warrant was sufficiently specific to comply with the
Fourth Amendment.

1

## C.    Even If the Warrant Lacked Probable Cause (it did not), the Good Faith Exception Would Apply

"The exclusionary rule does not apply to an officer's objectively reasonable reliance on a subsequently invalidated search warrant, unless the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Jobe*, 933 F.3d 1074, 1077 (9th Cir. 2019) (citation modified); *see also United States v. Crews*, 502 F.3d 1130, 1136 (9th Cir. 2007) (courts need not resolve "whether the affidavit supported probable cause" before "proceed[ing] directly to the issue of whether there was good faith reliance"). "[A]n officer cannot be expected to question the magistrate's probable-cause determination, unless the affidavit is bare bones, *i.e.*, it fails to provide a colorable argument for probable cause[.]" *Jobe*, 933 F.3d at 1077 (citation modified).

As discussed above, the affidavit submitted in support of the warrant application, Dkt. No. 185 at 14–44, contained substantial evidence against Mr. Hartfield and explicitly authorized seizure of location data for any number to which his cell phone number changed in the two months preceding execution, *id.* at 12. In no way may the affidavit be described as "bare bones," *Jobe*, 933 F.3d at 1077. *See* Dkt. No. 185 at 14–44. Therefore, even if the continuity provision within the warrant—or the warrant as a whole—should not have been issued, officers did not act unreasonably by reviewing the location data provided by T-Mobile.[3]

---

[3] Mr. Hartfield does not argue that an exception to the good-faith exception applies, and the Court sees no reason that one would apply. *See Crews*, 502 F.3d at 1136 ("There are four circumstances in which the good faith exception does not apply because reliance is per se unreasonable: (i) where an affiant misleads the issuing magistrate or judge by making a false statement or recklessly disregarding the truth in making a statement; (ii) where the magistrate or judge wholly abandons her judicial role in approving the warrant, acting only as a 'rubber stamp' to the warrant application rather than as a neutral and detached official; (iii) where the warrant is facially deficient in detail as to the place to be searched or the things to be found that the officers could not reasonably presume it to be valid; or (iv) where the affidavit upon which the warrant is based is so lacking in indicia of probable cause that no reasonable officer could rely upon it in good faith."); *see also United States v. Mejia*, No. 24-CR-212-1 (VSB), 2025 WL 934343, at *10 (S.D.N.Y. Mar. 27, 2025) (denying motion to suppress where the record sufficiently demonstrated that law enforcement "were objectively reasonable in their reliance on the search warrant" in searching defendant's iPhone, and no good faith exception applied).

### III.  CONCLUSION

For the foregoing reasons, Mr. Hartfield's Motion to Suppress Phone Records, Dkt. No. 185, is DENIED.

Dated this 10th day of December, 2025.

Lauren King
United States District Judge